WEAVER, PLAINTIFF, *v.* YODER ET, DEFENDANTS.

Common Pleas Court, Tuscarawas County.

No. 35361.   Decided October 3, 1961.

*Messrs. Smith, Renner, Hanhart & Miller*, for plaintiff.
*Messrs. Bowers & Bowers*, for defendants.

LAMNECK, J. The plaintiff in this action owns an 80 acre farm in Wayne Township of this county on which there is situated a two-story frame dwelling and other buildings.

The defendant Sarah E. Yoder is the owner of 87.15 acres of land adjoining the real estate of the defendant.

The defendant, Joas J. Yoder, the husband of the defendant, Sarah E. Yoder, for some time past has been engaged in the business of quarrying sandstone on the premises of his wife by means of blasting with gun powder.

The plaintiff claims in his petition that since July 1, 1960, by means of explosives of great power and frequency, his dwelling house has been and is being damaged, and that the defendants by their continuing operations, are causing great inconvenience, annoyance, discomfort, fear, injury and damage to the plaintiff in the enjoyment of his property. .

The plaintiff asks for a perpetual injunction, restraining said quarrying and blasting operations in close proximity to his premises, and for a judgment of $10,000.00 for damages to his dwelling house.

The parties waived a trial by jury on the question of damages and therefore both requested forms of relief were submitted to the court without the intervention of a jury.

At the time of the trial of this cause, quarry operations were being conducted within approximately sixty feet from the plaintiff's property line, and within 150 feet from the northwest corner of the plaintiff's residence.

Included in the blasting operations are a series of shots called "back shots" and another series designated "bottom shots."

In preparing for a back shot, 2 inch holes are usually drilled, 16 inches apart, to a depth of from 2 to 16 feet, the average depth being 6 to 8 feet. Back shot holes are drilled in a line from 4 to 6 to 8 feet from the face. The number of such holes vary depending on the size of the rock to be blasted from its base in a single lump. These holes are filled with black powder sticks, usually 2-¾ sticks for a twelve foot hole.

In making a "bottom shot," 2 inch holes of the same size

are drilled 3 or 4 feet apart at the base of the chunk to be blasted free.

When a portion of a stone have been blasted free, it is then sliced by other shots resulting in chunks usually 4' x 6' x 8' or 4' x 4' x 8'. The latter size usually weighs approximately 9-1/4 tons. Corners of the rock to be quarried are usually blasted free by means of other explosions.

Six to eight blasts are exploded on some days between the hours of 6:30 a. m. and 2:30 p. m. The black powder sticks used are 1-3/8 inches in diameter and 8 inches long. Prevailing winds are usually from the west. The plaintiff's house is slightly southeast of the present quarrying operation.

The defendant, Joas J. Yoder, was using a bulldozer, two lifting cranes, two air compressors, and air hammer and miscellaneous tools in conducting his quarrying operations at the time of the trial.

It appears from the evidence that two Smith Brothers performed the quarrying operations from July 25, 1960 to October 30, 1960 under an agreement with the defendant, Yoder, under which they used his equipment and conducted the quarrying operations. Mr. Yoder sold the stone and collected payment therefor. The Smith Brothers were paid for their services on a royalty basis. The court concluded from this evidence that the Smith Brothers were working under the direction and supervision of the defendant, Yoder, and that they were his employes even though they were paid on a royalty basis.

There was a lull in the quarrying operations complained of during the winter of 1960-1961, but since the spring of 1960 and up to the time of the trial, quarrying by means of drilling and blasting has been conducted with some degree of regularity in the day time.

There is some evidence to show that when some of the explosions occur, the sound can be heard for a distance of from one to two miles; that stones and debris were thrown on the plaintiff's residence; that explosions of the type and volume used in the operations would at times cause tremor vibration and concussion from the site of the explosion for a distance of 800 feet.

The court concludes from all the evidence submitted that

the operations of the defendant, Yoder, since July 1, 1960, has caused some damage to the plaintiff's residence in the form of criss-cross cracks in the plaster and other forms of minor damage.

The court further concludes from all of the evidence that the detonation of black powder to blast as high as 100 tons or more of sand stone from its base at one time, within 400 feet of the plaintiff's residence, causes the plaintiff and his family to live in constant fear, causes his residence to vibrate, resulting in damage thereto, and that the smoke, noise and dust resulting from the explosions constitutes a great discomfort to the plaintiff and his family.

The court further finds that said quarrying and blasting operations as now conducted in close proximity to the plaintiff's residence may continue for an indefinite period in the future.

It is the law of this state that "the use of land by the proprietor is not an . . . absolute right, but qualified and limited by the higher right of others to the lawful possession of their property. To this possession the law prohibits all direct injury, without regard to its extent or the motives of the aggressor. A man may prosecute such business as he chooses upon his premises, but he cannot erect a nuisance to the annoyance of the adjoining proprietor even for the purpose of lawful trade." *Hay* v. *The Cohoes Co.*, 2 Comstock (N. Y.), 159, quoted in *Tiffin* v. *McCormack et al*, 34 Ohio St., 638.

In the *Tiffin* v. *McCormack case* cited above, it is stated that "Neither can one in possession of a parcel of land operate and manage a mine or quarry upon it in such manner as to injure or destroy the property of an adjoining proprietor, justify himself by showing that he used ordinary care in the use of his own property."

There is some question presented in this case whether fragments of rock and any other solid debris actually fell upon the plaintiff's property as a result of the defendants' blasting operations.

In *Louden* v. *The City of Cincinnati et al*, 90 Ohio St., 144, 106 N. E., 970, the court made the following observation: "We are unable to distinguish between a case where a fragment of rock or a portion of the soil is thrown onto an adjoining prop-

erty and a case where the force of an explosion is transmitted through the soil and substratum jarring, cracking and breaking it . . . It is a distinction without a difference."

In 22 American Jurisprudence, Page 179, Section 52, it is stated:

"Liability for injuries resulting from the continuous vibrations of the earth or the vibrations of the air caused by blasting may also exist, at least in jurisdictions where such injuries are regarded as giving rise to a cause of action. Accordingly, it has been held that the fact that blasting operations were continuous and that in the operation explosives were used in such quantities as to cause injury to the plaintiff's property constitute at least prima facie evidence to the maintenance of a nuisance, and the defendant cannot justify by showing that in maintaining such nuisance he exercised due care."

In *Heilman et al* v. *The France Stone Co.*, 20 Ohio App., 261, 151 N. E., 798, it was held that the operator of a stone quarry who by means of blasting invades the rights of an adjoining land owner of real estate by interferring with his enjoyment thereof by concussion, commits a wrongful act in the nature of a trespass and will be enjoined from continuing the operation.

The court is of the opinion that the operations of quarrying for which the defendants are responsible since July 1, 1960, constitutes a trespass and resulted in damages to the residence of the plaintiff to the amount of $1000.00, for which sum judgment is rendered. (22 American Jurisprudence, Page 180, Section 53.)

The court is further of the opinion that the blasting and quarrying operations of the defendants as now conducted at the site alleged in the petition constitutes a nuisance and the continuation thereof should be enjoined.

It is therefore further ordered that the defendants be permanently enjoined from conducting quarrying and blasting operations of sandstone by means of explosives within four hundred feet (400) of the plaintiff's residence, and from detonating explosives for the blasting of sandstone and preparing therefor within one thousand feet (1,000) of the plaintiff's residence before the hours of 7:30 a. m. and after 4:00 P. M. Eastern Standard Time.