WILLIAMS CATTLE COMPANY, INC., Appellee and Cross–Appellant,

v.

GUS JUENGLING & SON, INC.; Aetna Casualty Insurance Company, Appellant and Cross–Appellee, et al.

[Cite as Williams Cattle Co., Inc. v. Gus Juengling & Son, Inc. (1992), 81 Ohio App.3d 472.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–910264, C–910287.

Decided June 24, 1992.

*Carroll, Bunke, Henkel, Haverkamp & Smith, Thomas R. Smith* and *Keith S. Riehl,* for appellee and cross-appellant.

*McCaslin, Imbus & McCaslin* and *Joseph K. Wehby,* for appellant and cross-appellee.

*Per Curiam.*

Williams Cattle Company, Inc. ("Williams") filed a complaint against Gus Juengling & Son, Inc. ("Juengling") and against Aetna Casualty Insurance Company ("Aetna"),[1] seeking judgment against Juengling in the amount of $321,275.14, together with interest thereon, and against Aetna on the bond issued by it pursuant to the provisions of the Packers and Stockyards Act, Section 181 *et seq.*, Title 7, U.S.Code ("the Act"). The condition of the bond was that "if the said Principal [Juengling] shall pay when due to the person or persons entitled thereto [Williams] the purchase price of all livestock purchased by the said Principal for his own account, then this bond shall be null and void, otherwise to remain in full force and virtue * * *."

Aetna, without answering, filed a motion to dismiss the claim against it on the ground that it had been discharged from its obligation on the bond because Williams had accepted Juengling's secured promissory note in the full amount of Juengling's indebtedness to Williams. Aetna supported its motion with the affidavit of T.L. Schwab and requested that the motion to dismiss be treated, pursuant to Civ.R. 12(B), as a motion for summary judgment.

Approximately two months later, Williams filed its motion for summary judgment supported by the affidavit of Lee Williams and a copy of the bond. Aetna, in response, filed a memorandum in opposition and attached a second affidavit of T.L. Schwab.

On December 21, 1990, Aetna moved the trial court for leave to file a third-party complaint against John E. Duggan II, who had signed an agreement to indemnify Aetna in the event that it should have to respond on the bond.

The journal of the trial court for March 7, 1991 contains an entry granting Williams's motion for summary judgment and overruling Aetna's motion to dismiss or for summary judgment. The entry contains the language as provided in Civ.R. 54(B) indicating the determination that there was no just reason for delay in entering final judgment against Aetna. This determination was apparently made because the underlying obligation of Juengling to Williams has not yet been decided. In addition, on March 8, 1991, the day after entry of summary judgment against it, Aetna was granted leave to file its third-party complaint within fourteen days. On March 19, 1991, the third-party complaint against Duggan was filed. The notice of appeal by Aetna, No. C–910264, was filed on April 5, 1991, from the judgment entered on March 7, 1991. The notice of appeal by Williams, No. C–910287, was filed on April

---

1. In the body of the complaint, Aetna Casualty Insurance Company was also identified as Aetna Casualty and Surety Company.

12, 1991, from the same judgment and within the time allowed by App.R. 4(A). The two appeals have been consolidated for purposes of decision.

## No. C–910264

Under this appeal number, Aetna advances four assignments of error. In the first assignment it contends that the trial court erred in ruling that Congress by the enactment of the Act preempted state suretyship law. The second assignment of error presents the issue of discharge of Aetna by Williams accepting the promissory note of Juengling in full payment of its indebtedness. The third assignment contends that the note effected the discharge of Aetna because it extended the time for payment without notice to and approval by Aetna. Finally, in its fourth assignment of error, Aetna asserts that summary judgment against it was improper because the question of damage to it resulting from the acceptance of the note and extension of time for payment presented genuine issues of material fact. We hold that the trial court erred and therefore reverse the judgment entered below.

The trial court erred in holding that Congress had preempted Ohio suretyship law by its enactment of the Act. The Act in the section titled "Federal preemption of State and local requirements" provides in pertinent part as follows:

"No requirement of any State * * * with respect to bonding of packers or prompt payment by packers for livestock purchases may be enforced upon any packer operating in compliance with the bonding provisions under section 204 of this title, and prompt payment provisions of section 228b of this title, respectively: *Provided,* That this section shall not preclude a State from enforcing a requirement, with respect to payment for livestock purchased by a packer at a stockyard subject to this chapter, which is not in conflict with this chapter or regulations thereunder: *Provided further,* That this section shall not preclude a State from enforcing State law * * * with respect to any packer not subject to this chapter or section 204 of this title." (Emphasis *sic.*) Section 228c, Title 7, U.S.Code.

This language does not pass the test for a finding of federal preemption of the provisions of Ohio suretyship law.

Our first consideration is whether, under the circumstances of the case we review, Ohio's law on discharge of sureties is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. See *Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587. The purposes and objectives of Congress must be found in the Act and it must be examined to determine whether Congress has acted in such manner

that its action should preclude enforcement of Ohio's suretyship law. *Id.* at 68–69, 61 S.Ct. at 405, 85 L.Ed. at 588.

■ Further, in determining whether there has been such federal preemption, a court is not to infer the intent to preempt from the fact that Congress has acted in a limited field. "In other words, such intent is not to be implied unless the act of Congress, fairly interpreted, is in actual conflict with the law of the state." *Huron Portland Cement Co. v. Detroit* (1960), 362 U.S. 440, 443, 80 S.Ct. 813, 816, 4 L.Ed.2d 852, 856.

■ When compliance with both federal and state regulation is a physical impossibility, the holding of federal preemption is inescapable. See *Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248. In that case the United States Supreme Court also stated:

"The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Id.* at 142, 83 S.Ct. at 1217, 10 L.Ed.2d at 256.

■ Clearly, the purpose of the Act is to protect the producer (Williams) against loss on cash sales when prompt payment, within a matter of days, is not received. To that end, a packer (Juengling) whose annual purchases exceed $500,000 must post a surety bond conditioned on prompt payment for its purchases. Juengling did not make prompt payment as required by the Act. Apparently, Williams made a claim on August 29, 1988 on the bond posted by Aetna, but then on October 31, 1988, requested Aetna to suspend processing the claim. Williams had accepted a note dated August 10, 1988 from Juengling that contained the statement that the note was "given by the Maker and accepted by the Payee in full payment of all amounts presently due the Payee by the Maker including, without limitation, all accounts payable of the Maker to the Payee." There was also a statement that the note was to be governed and construed by the laws of the state of Ohio. The note also contained the following acceptance:

"In consideration of the foregoing Promissory Note, the Second Mortgage of even date herewith from Gus Juengling & Son, Inc., and other good and valuable considerations, the receipt and sufficiency of which hereby are acknowledged, Williams Cattle Company, Inc. hereby accepts the foregoing Promissory Note on the terms and subject to the conditions therein."

This acceptance was signed by the president of Williams.

The Act defines a "cash sale" as a sale in which the seller does not expressly extend credit to the buyer. The amount for which the note was

given and received on August 10, 1988 was the total of purchases made during May and June 1988. The prompt payment provisions of the Act mandate that payment be made before the close of the next business day following purchase and transfer of possession of the livestock unless there is an express prior agreement in writing. The fourteen purchases made during the period from May 5 through June 1, 1988 were not preceded by an express prior written agreement for delayed payment as none is evidenced by the record.

■ However, Williams cannot be precluded from exercising its independent judgment on the manner in which it desires to be paid. If it does so by accepting a secured evidence of indebtedness rather than proceeding on the surety bond, the conclusion is inescapable that Congress has not clearly indicated its intent to preempt Ohio surety law. See *Florida Lime & Avocado Growers, Inc., supra.* The Act, fairly interpreted, is not in actual conflict with the state law. See *Huron Portland Cement Co. v. Detroit, supra.* Ohio's law on discharge of sureties is not, under the facts of the case on review, an obstacle to the accomplishment of the full purposes of Congress. See *Hines v. Davidowitz, supra.* Appellant's first assignment of error has merit.

Having determined that Congress has not preempted Ohio suretyship law, we proceed to a consideration of Aetna's second, third, and fourth assignments of error. These assignments present the common question of the existence of genuine issues of material fact.

■ The second assignment of error, as given to this court by Aetna, contains an apparent misidentification of the parties; therefore, we will address the single issue specified by Aetna in explication of this assignment. Aetna contends that the promissory note made and delivered by Juengling "in full payment of all amounts presently due [Williams] by [Juengling]" discharged Aetna from any obligation under the bond. It has long been the law in Ohio that payment by a principal will discharge the debt so far as the rights of the creditor against a surety are concerned. *Goodin v. State* (1849), 18 Ohio 6. The question of fact which remains in the case on review is the interpretation of the note, the acceptance, and the security of the mortgage of real estate. Were the note and acceptance intended by Williams and Juengling to be full payment so as to discharge the surety? Were the note and mortgage intended only to be additional security? Other issues of material fact may arise in a plenary hearing. The foregoing issues are sufficient to make summary judgment inappropriate in the case on review. The second assignment of error is well made.

■ In like manner, the third assignment of error is well taken. The change in the implicit, if not express, terms of the bond, that is, the extension

of time for payment for Juengling's purchases from the due date provided by the Act to a much later date, without the consent of Aetna, may bring about a discharge of the surety if the alteration materially affects its rights and obligations. These are also genuine issues of material fact.

Finally, the question of damage is raised in the fourth assignment of error. Did Aetna suffer damage by Williams's acceptance of the note and extension of time for payment? If so, what is the amount of its damage? These are peculiarly questions of fact which cannot be resolved on the record before this court. The fourth assignment of error has merit.

No. C–910287

In its appeal under the above number, Williams presents one assignment of error protesting the denial of its claim for interest and attorney fees. Obviously, this assignment is rendered moot by our determination of the merits of the appeal prosecuted by Aetna. However, we will address this assignment of error pursuant to App.R. 12(A). Based on the following reasoning, we conclude Williams's assignment of error is without merit.

The judgment from which this appeal is brought by Williams resulted from summary-judgment proceedings. The chief argument advanced by Williams is that the trial court correctly decided the motion for summary judgment filed by Aetna, that is, the court denied summary judgment in favor of Aetna because Congress had preempted state suretyship law. Williams reasons that because the trial court granted summary judgment in its favor on the bond posted by Aetna in its principal amount, it erred in denying the additional amount claimed for interest from the date of Aetna's rejection of the principal claim and for attorney fees.

The record transmitted to this court does not contain any direct evidence of the date of Aetna's rejection of Williams's claim on the bond. If we assume, for the purpose of this assignment of error, that the trial court was correct in holding that there has been a federal preemption of the rights of Aetna under state suretyship law, there remains a genuine issue as to the date of rejection of the claim on the bond which would render summary judgment on the question of prejudgment interest and attorney fees inappropriate. The judgment denying those amounts is affirmed.

The judgment appealed in case No. C–910264 is reversed and the cause remanded for further proceedings in accordance with this decision.

The part of the judgment appealed in case No. C–910287 is affirmed.

*Judgment accordingly.*

SHANNON, P.J., KLUSMEIER and UTZ, JJ., concur.