WILLIAMS CATTLE COMPANY, INC., Appellee,

v.

GUS JUENGLING & SON, INC.; AETNA CASUALTY
& SURETY COMPANY et al., Appellants.*

[Cite as *Williams Cattle Co., Inc. v. Gus Juengling
& Son, Inc.* (1995), 106 Ohio App.3d 872.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940103.

Decided Oct. 18, 1995.

---

* Reporter's Note: Discretionary appeals to the Supreme Court of Ohio were not allowed in (1996), 75 Ohio St.3d 1406, 441 N.E.2d 755, and 75 Ohio St.3d 1412, 661 N.E.2d 760.

*Charles G. Heyd,* for appellee.

*Joseph K. Wehby,* for appellant Aetna Casualty & Surety Co.

*Claudia L. Schaeffer,* for appellant John E. Duggan II.

*Per Curiam.*

The defendant-appellant, Aetna Casualty & Surety Company, and the third-party defendant-appellant, John E. Duggan II, bring this appeal from the order of the trial court granting judgment in favor of the plaintiff-appellee, Williams Cattle Company, Inc., in a case arising out of the issuance of a surety bond by Aetna pursuant to the provisions of the Packers and Stockyards Act, Section 181 *et seq.*, Title 7, U.S.Code. In their three assignments of error, Aetna and Duggan, the indemnitor of the bond, assert that the trial court erred in (1) overruling Aetna's motion to dismiss and granting judgment against Aetna, (2) awarding Williams prejudgment interest, and (3) employing an improper trial procedure. We find the first assignment of error to be well taken and thus reverse and enter judgment in favor of Aetna and Duggan.

Initially, we note that this is the second time this case has been before us on appeal. In *Williams Cattle Co., Inc. v. Gus Juengling & Son, Inc.* (1992), 81 Ohio App.3d 472, 611 N.E.2d 407, we held that Congress had not preempted Ohio suretyship law by its enactment of the Packers and Stockyards Act, and that the trial court erred by granting summary judgment in favor of Williams because issues of fact remained regarding Williams's acceptance from Juengling of a promissory note and mortgage ostensibly in full payment of the underlying debt.

The facts which bear on the dispositive legal issue in this appeal are not complex. As noted, Aetna issued a security bond to Gus Juengling & Son, Inc., a meat-packing business, in the amount of $100,000. When Juengling failed to pay Williams for cattle, Williams accepted a promissory note and mortgage from Gustave Juengling III, president of Juengling. The note, which was executed by Juengling on August 10, 1988, contained the following language:

"FOR VALUE RECEIVED and in full payment of all obligations of GUS JUENGLING & SON, INC., to WILLIAMS CATTLE COMPANY, INC. as of the date hereof, GUS JUENGLING & SON, INC., an Ohio corporation, hereby promises to pay to the order of WILLIAMS CATTLE COMPANY, INC. at London, Kentucky, the sum of $371,173.47, with interest at the rate of 11% per annum, payable in equal weekly installments of $2,000 each beginning September 2, 1988 and continuing on or before every Friday of each week thereafter until the entire $371,173.47 and all interest is paid in full.

"This Note is secured by a Second Mortgage dated August 10, 1988 between the Maker and the Payee.

"This Note is give[n] by the Maker and accepted by the Payee in full payment of all amounts presently due the Payee by the Maker including, without limitation, all accounts payable of the Maker to the Payee."

The note also contained the following acceptance:

"In consideration of the foregoing Promissory Note, the Second Mortgage of even date herewith from Gus Juengling & Son, Inc., and other good and valuable considerations, the receipt and sufficiency of which hereby are acknowledged, Williams Cattle Company, Inc. hereby accepts the foregoing Promissory Note on the terms and subject to the conditions therein."

Lee Williams, president of Williams, executed the acceptance portion of the note. The second mortgage was executed and delivered by Gustave Juengling III to Williams. Apparently, there was no discussion between Juengling and Williams prior to delivery of the promissory note and mortgage concerning their effect on the Aetna bond. The parties do not dispute that Aetna, which was not a party to either the promissory note or the mortgage, was not notified prior to their execution and acceptance.

On August 29, 1988, Williams submitted a proof of claim under the Aetna bond in the amount of $371,273.47. On September 12, 1988, Aetna received notice of the claim from the Packers and Stockyards Administration. The following day, Aetna learned of the existence of the promissory note when its claims adjuster received a copy of correspondence written by Juengling's attorney to Juengling's insurance agent stating that the claim under the bond was "improper since the open account [between Williams and Juengling] has been closed, the promissory note is current, and Williams is now a secured creditor."

On October 28, 1988, counsel for Williams telephoned Aetna and requested that the claim under the bond be temporarily suspended until further notification. Juengling made $82,000 in payments under the promissory note from September 15, 1988, to April 27, 1989, and then stopped. On June 20, 1989, counsel for Williams telephoned the adjuster at Aetna and requested that the temporary suspension of the bond be lifted and that Aetna make payment on the bond. Aetna denied the claim, claiming that Williams's acceptance of the promissory note and mortgage discharged the surety.

I

In their first assignment of error, Aetna and Duggan assert that the trial court erred when it overruled Aetna's motion to dismiss and granted judgment against Aetna. Under this assignment, they raise two issues, the first of which is stated as follows:

"In an action for payment under a surety bond, where the record shows that the obligee accepted a promissory note and mortgage as payment for the obligation, the surety is discharged from payment under the bond, and judgment must be entered for the surety upon appropriate motion."

As we noted in the previous appeal, "it has long been the law in Ohio that payment by a principal will discharge the debt so far as the rights of the creditor against a surety are concerned." *Williams Cattle Co., supra,* 81 Ohio App.3d at 477, 611 N.E.2d at 411, citing *Goodin v. State* (1849), 18 Ohio 6. However, we also noted that it was a question of fact for the trial court whether the note and acceptance were intended by Juengling and Williams to be full payment for the debt, as opposed to additional security.

Following the trial of this case, the trial court made several findings of fact, including the following:

"8. The Promissory Note and Second Mortgage *were not payment of the purchase price* to Williams, but rather the Promissory Note and the Second Mortgage were *promises to pay the purchase price* in fixed installments to be paid in the future *and were given as additional security for the payment of the purchase price.*" (Emphasis *sic.*)

We interpret Aetna and Duggan's first issue as an implicit challenge to the weight and sufficiency of the evidence underlying the trial court's finding that the promissory note and mortgage were given as security and not as payment for the underlying obligation, as well as a legal challenge to the distinction drawn by the trial court between payment of the purchase price and a promise to pay the purchase price as it affects the obligations of a surety.

We begin first with the distinction drawn by the trial court between acceptance of payment and acceptance of a promissory note, and its conclusion that, while the former discharges a surety, the latter does not. We agree with Aetna and Duggan that this distinction and the effect given to it by the trial court are not fully consonant with Ohio suretyship law. See *Hoffmaster v. Junkin* (C.A.6, 1925), 3 F.2d 220; *People's Ins. Co. v. McDonnell* (1885), 41 Ohio St. 650; *Goodin, supra.* See, also, 52 Ohio Jurisprudence 3d (1984), Guaranty and Suretyship, Section 93. The issue turns entirely upon whether the creditor, in this case Williams, agreed to receive the note as payment for the debt.[1] See *Chase v. Brundage* (1898), 58 Ohio St. 517, 51 N.E. 31.

It is axiomatic that "on the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. In a civil case, "[j]udgments

---

1. Williams argues that the language of the bond—that payment of the "purchase price of all livestock" renders the bond "null and void"—should be read to exclude the possibility that the acceptance of a promissory note for the purchase price has the same effect. We disagree, as we construe this language simply to be a statement of the general rule that payment discharges the surety.

supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

As noted, the trial court found that Williams accepted the note only as additional security. Among its conclusions of law, the trial court stated:

"9. Aetna objected to the introduction of evidence from Williams on the 'intent' of the parties with respect to [the] note and mortgage. Aetna's objection was made on the basis of the parol evidence rule and was sustained. The Court looked to the actions of the persons involved, the stipulations, and the exhibits."

■ Although no party has questioned the trial court's decision to apply the parol evidence rule, we note that the trial court's application of the rule is at odds with the rule itself. That rule, simply put, is that when the terms of a contract are clear, unequivocal, and unambiguous, it is error for the trial court to admit extraneous evidence of what the intention of the parties might have been. See *Selzer v. Turske* (1928), 30 Ohio App. 15, 164 N.E. 65.

As excerpted previously, the promissory note contained the following language:

"This Note is give[n] by the Maker and accepted by the Payee *in full payment* of all amounts presently due the Payee by the Maker including, without limitation, all accounts payable of the Maker to the Payee."

This language is a clear, unequivocal, and unambiguous statement of the parties' intent that the promissory note was to be "in full payment" for the underlying obligation. Indeed, nowhere within the four corners of the document is there language to support the conclusion that the promissory note was given only as additional security. We hold, therefore, that the trial court erred by failing to treat as dispositive the language of the promissory note, and that consequently its factual finding that the parties intended the promissory note as security, rather than as payment, is contrary to the manifest weight of the evidence.

■ The second issue raised by Aetna and Duggan under this assignment is as follows:

"In an action for payment under a surety bond, where the record shows that the obligee accepted a promissory note which extended the time for payment of the debt, the surety is discharged from payment under the bond, and judgment must be entered for the surety upon appropriate motion."

■ Under Ohio suretyship law, as a general proposition, "a binding agreement upon a valid consideration to give further time to the principal debtor, will

discharge the surety." *McComb v. Kittridge* (1846), 14 Ohio 348. As stated by the court in *Jones v. Turner* (1881), 6 Ohio Dec.Rep. 1059, 1060:

"It is too clear to require reference to authorities that a guarantor is released by a definite extension of time, agreed upon between the creditor and principal debtor for a valuable consideration without the guarantor's consent. These extensions were for definite periods in consideration of an increased rate of interest. Even an agreement to the same rate would have been sufficient consideration under our decisions. Plaintiff's counsel rely upon the finding of the court, that Thomas Turner was insolvent at the expiration of the first extension and has ever since remained so, so that William Turner has not been in fact injured by such extension. In case of mere delay a guarantor is not discharged, except to the extent that he has been injured thereby. But in case of an extension of time he need show no injury. The law presumes it, and that conclusively. He is injured by the change in terms of his obligation, by the loss of his right during the period of the extension to pay the debt and proceed against the principal, and of his right to require the creditor to so proceed."

There is authority, however, that a different rule applies in the case of a compensated surety company, such as Aetna, which charges a premium to compensate for its risks. According to such authority, in the case of a compensated security, an agreement between the principal and the creditor to extend time only discharges the surety when the surety is materially harmed thereby. See Restatement of the Law, Security (1941), Section 129; *Am. Fid. Co. v. Metro. Paving Brick Co.* (1919), 30 Ohio C.A. 209, 45 Ohio C.C. 662 (reasonable extension of time will not operate to release a compensated surety).

■ Furthermore, a surety may subsequently consent to, or ratify, an extension of time given without its knowledge. In this regard, the trial court's findings of fact, excerpted below, cannot be overlooked:

"17. During the period of September 7, 1988 and continuing until the suit was filed in this case on August 4, 1989, Aetna, with the intention, or at least an expectation, that its conduct should be acted upon by Williams and with knowledge of the facts surrounding the execution, issuance and delivery of the Promissory Note and Second Mortgage, deceived Williams and delayed and 'sandbagged' Williams' efforts to collect on The Bond. Aetna knowingly acquiesced in Juengling's payment of installments on the Promissory Note and accepted the benefit that Juengling would continue making installment payments. Further, Aetna had decided to deny Williams' Bond claim and gave Williams no notice of its intention to deny the claim. Williams was not aware that Aetna

intended to deny its claim on The Bond and reasonably relied on Aetna's conduct in accepting installment payments on the Promissory Note.

" * * *

"19. Without advising Williams, Aetna did maintain a 'wait to see' attitude as to the payment of the Promissory Note Installments. (See Exhibits 18, 27, 18 and 29.)

" * * *

"23. The existence of the Promissory Note and Second Mortgage and any extension of Juengling's obligation to pay Williams the purchase price did not materially affect the rights and obligations of Aetna under the Bond for the reason that:

"a. The $100,000 obligation of Aetna with respect to The Bond was identical before and after the execution, issuance and delivery of the Promissory Note and Second Mortgage from Juengling to Williams.

"b. Aetna's rights to indemnity were identical before and after the execution, issuance and delivery of the Promissory Note and Second Mortgage from Juengling to Williams.

" * * *

"26. Aetna suffered no damage or prejudice by the existence of the Promissory Note and Second Mortgage and suffered no damage or prejudice by any extension of Juengling's obligation to pay Williams the purchase price."

Significantly, Aetna and Duggan have not asked us to review any of these factual findings, and have not made any argument in their brief addressing the issue of whether, by its conduct, Aetna may have ratified the extension of time in this case. Given the trial court's unchallenged findings that Aetna was not materially harmed, that it "knowingly acquiesced" in the extension of time, and that, in fact, it "deceived" and "sandbagged" Williams, we cannot say that the extension of time for payment contained in the note was something that, by itself, as a matter of law, discharged Aetna.

■ The question of whether the agreement to extend the obligation discharged Aetna, however, is separate from the issue of whether the promissory note constituted payment for the underlying debt. No matter what machinations Aetna may have subsequently employed, the fact is that Williams, by expressly accepting the note and mortgage "in full payment," thereby effectively extin-

guished the antecedent obligation upon which Aetna had agreed to act as surety. This discharge was in law and was not affected by Aetna's subsequent behavior.

The first assignment is therefore validated with respect to the first issue only.

## II

In their second assignment of error, Aetna and Duggan challenge the trial court's award of prejudgment interest to Williams. Based upon our resolution of the first assignment of error, the second assignment is also well taken. In their third assignment of error, Aetna and Duggan challenge the trial procedure adopted by the trial court. Our resolution of the first assignment of error renders this assignment moot.

## III

Based upon the foregoing, the judgment of the trial court is reversed and judgment is entered in favor of Aetna pursuant to our holding that its obligation under the bond was discharged by payment of the debt. The award of prejudgment interest to Williams is accordingly vacated. Although no specific relief has been requested with respect to Duggan, having entered judgment in favor of Aetna, we vacate the trial court's judgment against him on the third-party complaint.

*Judgment accordingly.*

MARIANNA BROWN BETTMAN, P.J., SUNDERMANN and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.