BANFORD et al., Appellants,

v.

ALDRICH CHEMICAL COMPANY, INC., et al., Appellees.

[Cite as *Banford v. Aldrich Chem. Co.*, 180 Ohio App.3d 107, 2008-Ohio-6837.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22600.

Decided Dec. 24, 2008.

See also, 2004 WL 5274462, 2005 WL 5338393, 2006 WL 4453742, 2006 WL 4453926.

110

Behnke, Martin & Schulte, Richard W. Schulte, and Stephen D. Behnke; Dyer, Garofalo, Mann & Schultz, John A. Smalley, and Jeffrey G. Chinault; and Taylor Jones Jr. and Cheryl Washington, for appellants.

Faruki Ireland & Cox P.L.L., Martin A. Foos, and Nicholas M. Smith, for appellee.

FAIN, Judge.

{¶ 1} Plaintiff-appellant Taylor Ferguson appeals from a judgment awarding Ferguson $100 in compensatory damages against defendant-appellee Aldrich Chemical Company, Inc. Ferguson's claim arose from an explosion that occurred at the Isotec Factory, which was owned and operated by Aldrich Chemical and was located in Miamisburg, Ohio. The explosion resulted in the evacuation of residents within a one-mile range of the factory for approximately 24 hours. A class action was subsequently filed against Aldrich Chemical, and Ferguson was one of the class members who claimed damages based on theories of nuisance, negligence, and strict liability.

{¶ 2} Ferguson contends that the trial court erred by omitting the phrase "ultimately resulting in injury" in its definition of "nuisance" for the jury, and by instructing the jury that it could only award damages for annoyance and discomfort if there were an "appreciable, tangible harm resulting in actual, material physical discomfort."

{¶ 3} Ferguson also contends that the trial court erred in excluding evidence of fear and upset that she suffered, and in holding that she and other plaintiffs could not recover for the loss of use and enjoyment of their property for any period of time after the 24–hour evacuation period.

{¶ 4} In addition, Ferguson contends that the trial court erred in excluding evidence of prior explosions, detonations, leaks, and similar calamities at Isotec. Finally, Ferguson contends that the jury verdict, which awarded zero damages for Ferguson's loss of use and enjoyment of her home, and for her annoyance and discomfort, was against the manifest weight of the evidence.

{¶ 5} We conclude that the trial court did not err in omitting the words "results in injury" from the definition of nuisance. Although Aldrich Chemical admitted liability, plaintiffs were still required to establish that the wrongful conduct or hazardous condition proximately caused their damages. We do agree that the definition of nuisance would have been less confusing if it had mentioned enjoyment of property. This was not an error meriting reversal in itself but is something that can be corrected on remand.

{¶ 6} We also conclude that the trial court erred in instructing the jury that a plaintiff must show an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort in order to recover damages for annoyance and discomfort. This error materially misled the jury and requires reversal of the judgment.

{¶ 7} The trial court did not err in refusing to admit evidence of fear and upset, because the court actually allowed plaintiffs to present considerable evidence on this point. Where the court did err was in instructing the jury that fear and upset could not be considered in deciding whether the plaintiffs should recover damages for personal annoyance and discomfort.

{¶ 8} We further conclude that the trial court erred in holding that Ferguson could not recover for the loss of use and enjoyment of her property for any period of time that did not directly follow the 24-hour evacuation period. The plaintiffs alleged a continuing nuisance after the explosion, and the trial court's reason for limiting damages was the requirement that plaintiffs show actual, material, physical discomfort in order to recover.

{¶ 9} The trial court also erred in excluding evidence of prior explosions or detonations at Isotec, as the relevance of this evidence was not outweighed by any potential prejudice. Finally, in view of the disposition of the first four assignments of error, the issue of whether the judgment is against the manifest weight of the evidence is overruled as moot. Accordingly, the judgment is reversed, and this cause is remanded for further proceedings.

## I

{¶ 10} Aldrich Chemical purchased the Isotec factory in 2001. At that time, and until December 2003, Isotec was engaged in the process of cryogenic distillation of nitric oxide, which is a highly hazardous, poisonous, and volatile chemical. The distillation process took place in a column or cylinder known as "NO3" that contained 500 to 600 pounds of nitric oxide. During the distillation process, liquid nitric oxide was used for cooling.

{¶ 11} At about 7:15 a.m. on September 21, 2003, a nitrous-oxide leak occurred in NO3 and caused nitric oxide to be pumped out into the environment. When nitrous oxide combines with oxygen, it immediately forms nitrous dioxide, which is also a hazardous material and a toxic gas.

{¶ 12} After the leak was discovered, Isotec called the Miami Township Police Department to report that one of its units was not being cooled properly. Isotec indicated that an additional cooling source would run out in approximately two hours and that an explosion could occur if the problem were not brought under control. Consequently, the police and fire departments arrived at Isotec around

8:30 a.m. and shut down the road in front of the plant. Around 10:15 a.m., the NO3 column suddenly exploded. The explosion was variously described as "massive," like a "sonic boom" or an "enormous crack," and as a huge blast that sounded like a bomb going off. The explosion caused homes, doors, and windows to move, rattle, and shake. Eyewitnesses also reported seeing a big cloud of rust-colored gas or a purplish-mixture plume immediately after the blast.

{¶ 13} Officer Dipietro of the Miami Township Police Department was quite close to the explosion. Dipietro indicated that the NO3 column basically came out of the ground and pieces of debris were going everywhere. As a result, Dipietro and others took shelter under a fire department vehicle. After the explosion, officials and Isotec personnel drew back from the immediate area. At that time, the fire command was focused on a carbon monoxide tank that had moved, was unstable, and was on fire.

{¶ 14} Because of concerns about further explosions, people living within a one-mile radius of the plant were evacuated, along with some others who lived outside that area. Police officers went door-to-door in the affected areas, explaining to residents that there had been an explosion and that they should evacuate as soon as possible. At the time of the evacuation, no one could give residents an idea of how long the evacuation would last. Residents in the area left suddenly, often without necessary clothing, medicine, or their pets, and people who were away from their homes at the time of the explosion were not able to return to retrieve their belongings. Approximately 24 hours later, residents were allowed to return home.

{¶ 15} On December 1, 2003, two of the evacuated residents, Christine Banford and Doug Graeser, filed a class action suit against Aldrich Chemical. The complaint indicated that the plaintiffs sought to represent about 2,000 people in 500 homes in the evacuation area. Subsequently, on December 5, 2003, a second class action was filed by William and Melissa O'Donnell.

{¶ 16} An agreed order consolidating the two cases was filed in September 2004.[1] Other pending actions were also consolidated, including a complaint brought by 36 plaintiffs who lived in the "general area" of the Isotec facility, but outside the one-mile radius, and a complaint filed by 11 other plaintiffs living in the immediate area of Isotec. In June 2006, these cases were consolidated with the present case by agreed order.

{¶ 17} Previously, in October 2005, the trial court had filed an order certifying a class action and establishing a four-phase procedure. Phase One was to consist of a jury trial on liability issues, said to be: "[W]hether Aldrich factually

---

**1.** The O'Donnells filed a motion to voluntarily dismiss their action under Civ.R. 41(B), in October 2005, that was granted by the court.

breached a duty for purposes of the negligence cause of action; whether the conduct and resulting explosion demonstrates strict liability; [and] whether the conduct constitutes an absolute or qualified nuisance * * *."

{¶ 18} The court also noted that, assuming a liability verdict were to be returned against Aldrich Chemical:

{¶ 19} "[T]he class action will decertify into a 'second phase' to allow the Plaintiffs and all putative Plaintiffs to individually present their causation and compensatory damages claims to separate juries. Notably, the 'second phase' juries will be instructed as a matter of law that the 'liability' verdict was previously determined and that the only issues for their determination are individualized causation and compensatory damages."

{¶ 20} Assuming a recovery in Phase Two, the case would be recertified for Phase Three, where a jury would consider whether, factually, Aldrich Chemical had acted maliciously, with the result that punitive damages and an attorney-fee award would be appropriate. Finally, in the event of a finding of malicious conduct, the Phase Three jury would decide, in Phase Four, the amount, if any, of punitive damages that would be awarded.

{¶ 21} In October 2006, Aldrich Chemical filed a notice with the trial court indicating that it would not contest Phase One liability and would accept legal responsibility for the damages caused by the explosion. The trial court, therefore, canceled the jury trial that was scheduled for that month and moved forward with Phase Two.

{¶ 22} In January 2007, the trial court randomly selected a group of claimants who would proceed to jury trial on Phase Two. The Phase Two jury trial was held in April 2007 and included testimony from 31 claimants who lived in 17 households in the evacuation area. The jury was given interrogatories for each claimant that asked the jury to state whether Aldrich Chemical's "negligence, ultrahazardous activity and/or nuisance had proximately" caused damage to the particular claimant. Other interrogatories required the jury to specify sums that would compensate a claimant for any one of six potential items of damages. These items included: "Loss of Use of a Property before the 24–hour evacuation period"; "Loss of Use of a Property during the 24–hour evacuation period"; "Annoyance and Discomfort before the 24–hour evacuation period"; "Annoyance and Discomfort during the 24–hour evacuation period"; "Annoyance and Discomfort after the 24–hour evacuation period"; and "Evacuation Expenses."

{¶ 23} Before the case was submitted to the jury, the trial court decided which items of damage would be submitted to the jury for each claimant. For example, one claimant may have set forth evidence of annoyance and discomfort during the evacuation period, but not after. Another claimant may have set forth proof on

both these items, but may not have had evacuation expenses, and so forth. Based on its own interpretation of the evidence and applicable law, the trial court told counsel which categories of damage would be included on each particular claimant's jury interrogatory.

{¶ 24} The jury subsequently returned verdicts in favor of the individual claimants in amounts ranging from $35 to $625. Most claimants received compensation for loss of use of property during the evacuation, with the vast majority receiving what appeared to be a standard rate of $35. Taylor Ferguson was the only claimant who did not receive any compensation for loss of use of property during the evacuation.

{¶ 25} Ferguson was also one of only a handful of claimants who received an award for annoyance and discomfort before the evacuation. Several claimants received amounts ranging from $50 to $250, and Ferguson received $100. Less than a third of the claimants received damages for annoyance and discomfort during the evacuation period. Ferguson was not one; she was awarded zero dollars for this particular claim.

{¶ 26} The trial court did not include the remaining items of damages in Ferguson's interrogatories, so the jury did not consider whether Ferguson was entitled to damages for loss of use before the evacuation period, annoyance and discomfort after the evacuation period, or evacuation expenses. Notably, only one claimant was awarded damages ($35) for loss of use of property before the evacuation period, and only three claimants received an award for loss of use after the evacuation period. Again, these were minimal amounts, ranging from $50 to $200. Finally, only one claimant was awarded damages for annoyance and discomfort after the evacuation period ($50).

{¶ 27} Following the jury's verdict, Ferguson dismissed her claim for punitive damages, and the trial court entered a judgment that included a finding of no just reason for delay. Taylor appeals from the judgment in her favor in the amount of $100.

## II

{¶ 28} Ferguson's first assignment of error is as follows:

{¶ 29} "The trial court erred in its instructions and/or admonitions to the jury."

{¶ 30} Under this assignment of error, Ferguson contends that the trial court erred in three ways when instructing or admonishing the jury: (1) by omitting the phrase "which results from injury" from the definition of a nuisance, and/or failing to define nuisance in terms that included a disruption of the peaceful enjoyment of property; (2) by admonishing the jury that fears or subjective concerns of homeowners were not compensable; and (3) by instructing the jury

that it could not award damages for annoyance and discomfort unless a claimant established "appreciable, tangible harm resulting in actual, material physical discomfort." Each of these items will be considered separately.

## A. Proximate–Cause Requirement

{¶ 31} At a pretrial conference, the court discussed its proposed jury instruction on the definition of nuisance. The court's original draft proposed the following definition:

{¶ 32} "Nuisance is premised on negligence. It consists of a lawful act that is so negligently or carelessly done as to have created an unreasonable risk of harm which results in injury to another."

{¶ 33} Aldrich Chemical objected to the instruction, and on consideration, the trial court agreed with Aldrich Chemical that the portion stating "which results in injury" could mislead or confuse the jury because it seemed to imply that injuries had in fact resulted, when Aldrich Chemical had reserved the right to contest causation as to particular claimants. Accordingly, the trial court said that it would eliminate this clause in the final jury instructions.

{¶ 34} Ferguson contends that removing the phrase "which results in injury" from the definition was prejudicial because it forced claimants to show that an injury had occurred, even though Aldrich had already conceded that it had caused injury by conceding liability and waiving the liability phase of the trial.

{¶ 35} The law provides that:

{¶ 36} "A trial court should ordinarily give a requested jury instruction if it is a correct statement of the law as applied to the facts of the case, and if there was evidence presented at trial from which reasonable minds could reach the conclusion sought by the instruction. * * * When considering whether to use a jury instruction, it is within the sound discretion of the trial court to refuse to admit proposed jury instructions that are either redundant or immaterial to the case. * * * Accordingly, a reviewing court will not reverse unless an instruction is so prejudicial that it may induce an erroneous verdict. * * * An appellate court's duty is to review the instructions as a whole, and, '[i]f, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled.'" *Anousheh v. Planet Ford, Inc.*, Montgomery App. Nos. 21960 and 21967, 2007-Ohio-4543, 2007 WL 2482625, ¶ 15, quoting *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 410, 629 N.E.2d 500.

{¶ 37} We find no abuse of discretion or prejudice as a result of the omission of the phrase in question. Aldrich Chemical filed a notice with the trial court

indicating that it accepted legal responsibility for the explosion. Subsequently, in January 2007, the trial court resolved a dispute about the meaning of Aldrich Chemical's "no-contest notice."

{¶ 38} The trial court first concluded that the "no-contest notice" was ambiguous. The court then construed the notice as an amendment to Aldrich Chemical's answer and as an admission of the factual averments pertinent to the liability issues in the pending cause of action.

{¶ 39} According to the court, the liability issues under consideration were negligence, strict liability, and nuisance. The court concluded that Aldrich Chemical's stipulation of liability had satisfied the existence of a duty and its breach. However, the court also concluded that Aldrich Chemical still intended to contest the third element of negligence, pertaining to proximate causation and injury. Likewise, Aldrich Chemical had stipulated the conduct of an ultrahazardous activity for purposes of the strict-liability claim, but not issues of proximate cause and injury.

{¶ 40} During its discussion of these matters, the trial court noted the lack of precise definition in the area of nuisance and the blending of absolute and qualified nuisance with the elements of strict liability and negligence. The court concluded that Aldrich Chemical had stipulated that its conduct constituted a nuisance, leaving for resolution whether the plaintiffs had sustained injury as a proximate result of the nuisance.

{¶ 41} We agree with the trial court on these points. Aldrich Chemical admitted that it had engaged in conduct that created a nuisance. Aldrich Chemical also admitted that it had been negligent and that it was liable under the theory of strict liability. However, under any of these liability theories, the plaintiff must still establish that the wrongful conduct or hazardous condition proximately caused damages. See, e.g., *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 321, 4 O.O.3d 466, 364 N.E.2d 267, quoting *State Auto Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 152, 65 O.O.2d 374, 304 N.E.2d 891 (strict liability in tort requires a defective product and proof that the defect was the " 'direct and proximate cause of the plaintiff's injuries or loss' "); *James v. Cincinnati*, Hamilton App. No. C–070367, 2008-Ohio-2708, 2008 WL 2312637, at ¶ 31 (in a nuisance action, the plaintiff must prove breach of duty to maintain premises free of nuisance and that the breach proximately caused plaintiff's injuries); and *Collins v. Natl. City Bank*, Montgomery App. No. 19884, 2003-Ohio-6893, 2003 WL 22971874, at ¶ 22 (elements of a negligence claim include a duty, breach of the duty, and damages caused by the breach). See also *Goldman v. Johns–Manville Sales Corp.* (1987), 33 Ohio St.3d 40, 46, 514 N.E.2d 691 (noting that plaintiffs traditionally have the burden of demonstrating that their injuries are caused by the defendant). Accordingly, the trial court did not err in

requiring plaintiffs to prove that Aldrich Chemical proximately caused their injury and damages.

{¶ 42} Ferguson also contends that the trial court's definition omitted the concept of "peaceful enjoyment of property" and was inconsistent with established definitions of nuisance. Traditionally, nuisance is defined as " 'the wrongful invasion of a legal right or interest.' *Taylor v. Cincinnati* (1944), 143 Ohio St. 426, 432, 28 O.O. 369, 55 N.E.2d 724. 'Wrongful invasion' encompasses the use and enjoyment of property or of personal rights and privileges." *Kramer v. Angel's Path, L.L.C.*, 174 Ohio App.3d 359, 2007-Ohio-7099, 882 N.E.2d 46, ¶ 15. A private nuisance has also been defined as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 712, 622 N.E.2d 1153.

{¶ 43} The trial court did not define "nuisance" in the jury instructions, beyond noting that it is a lawful act so negligently done that it creates an unreasonable risk of harm. The court went on to discuss the three potential types of recovery for a nuisance: loss of use, annoyance and discomfort, and evacuation expenses. The court described loss of use simply as compensation for the "reasonable loss of use" of property, without mentioning the concept of enjoyment of the property.

{¶ 44} "A trial court is not required to give a proposed jury instruction in the precise language requested by its proponent, even if the proposed instruction states an applicable rule of law. Instead, the court has the discretion to use its own language to communicate the same legal principles. * * * Moreover, if the court's instruction correctly states the law pertinent to the issues raised in the case, the court's use of that instruction will not constitute error, even if the instruction is not a full and comprehensive statement of the law. * * * Finally, the court has the discretion to refuse to give a proposed jury instruction if that instruction is either redundant or immaterial to the case." *Henderson v. Spring Run Allotment* (1994), 99 Ohio App.3d 633, 638, 651 N.E.2d 489.

{¶ 45} The trial court's explanation of nuisance would probably have been more helpful if it had included the traditional definitions that we have recited, but the omission by itself would probably not require reversal. However, since the judgment is being reversed, and this cause is being remanded for further proceedings, the definitions of nuisance quoted from *Kramer* and *Brown* would be helpful to the jury and should be included.

## B. Requirement of Physical Discomfort

{¶ 46} Ferguson's next argument is that the trial court should have allowed the claimants to recover for annoyance, fear, or concern without imposing a require-

ment that they must have encountered actual, material, physical discomfort. Ferguson contends that the trial court further erred in giving a "physical discomfort" instruction, which caused the jury to believe that Ferguson and other claimants must show a physical injury before they could recover damages for annoyance and discomfort.

{¶ 47} Before the trial, both sides filed motions to exclude or limit evidence and also submitted proposed jury instructions. A critical consideration was whether the plaintiffs had to show an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort in order to recover damages for annoyance and discomfort under the nuisance claim. The defendants contended that such a showing was necessary, while plaintiffs asserted that the concept of material or substantial physical discomfort was merely related to the existence of a nuisance and was not a prerequisite for recovering damages for annoyance.

{¶ 48} During a March 2007 hearing, the trial court stressed that "physical harm" and "physical discomfort" are two different concepts. The trial court also concluded that the jury would need guidance as to what was meant by annoyance and discomfort damage. After reviewing some case law, the trial court stated:

{¶ 49} "I'm sort of gravitating to the thought that what the jury would be instructed would be that there must be, quote, appreciable, substantial, tangible injury resulting in actual material and physical discomfort. That text is pulled verbatim out of the Bullock case and it's the text that is repeated in the other appellate districts.

{¶ 50} "And so I'm really gravitating to the position that the Court would not tell the jury—instruct the jury that there must be substantial physical discomfort but the Court would instruct the jury that there must be appreciable, substantial, tangible injury resulting in actual material and physical discomfort. But there must be physical discomfort as opposed to nonphysical discomfort. But, again, discomfort doesn't mean harm."

{¶ 51} The court allowed the parties to submit written memoranda on the issue and then held another conference in early April 2007. At this conference, the court concluded that the plaintiffs must establish physical discomfort in order to recover compensatory damages. The court also rejected plaintiffs' contention that nonphysical personal annoyance and discomfort could be a compensable item of nuisance damages. In particular, the court reasoned that if the plaintiff must show appreciable, tangible injury resulting in actual, material, and physical discomfort to prove nuisance, then the compensable item must also be physical discomfort. By the same token, if nonphysical personal discomfort were compensable, that item would have been included in the definition of a nuisance. The trial court, therefore, rejected plaintiff's suggested use of 3 Ohio Jury Instructions (2006), Section 345.13(4). This standard Ohio jury instruction states:

{¶ 52} "If you find by the greater weight of the evidence that the defendant created a nuisance and the nuisance proximately caused damages to the plaintiff, you will further decide what damages, if any, should be awarded to the plaintiff.

{¶ 53} " * * *

{¶ 54} "ANNOYANCE AND DISCOMFORT. If you find by the greater weight of the evidence that the defendant created a nuisance and the nuisance proximately caused damages to the plaintiff, you will further decide whether the plaintiff suffered personal annoyance and discomfort. When considering annoyance and discomfort damages, no precise rule for ascertaining the damage can be given as, in the very nature of things, the degree of personal annoyance and discomfort is not susceptible to exact measurement. Therefore, you must decide what the plaintiff should have in money, if any, and what the defendants ought to pay, if any, in view of the discomfort or annoyance to which the plaintiff may have been subjected." 3 Ohio Jury Instructions (2006), Section 345.13(2) and (4).

{¶ 55} In rejecting this instruction, the trial court again stressed that "physical discomfort is not equivalent to bodily injury" and that the jury would be instructed that bodily injury need not be shown. The court also stated that the plaintiffs would not be permitted to testify that they were fearful or emotional, or that they had experienced nonphysical subjective discomfort, because such testimony, standing alone, was neither relevant nor admissible. However, the court commented that this evidence might be relevant and admissible in the context of other factual issues.

{¶ 56} The court followed this up at trial by instructing the jury during the testimony of one witness:

{¶ 57} "[I]n this trial one of the items that is not the subject of a damage calculation by the jury are the fears or the subjective concerns of the homeowners, and there may be testimony of upcoming witnesses that may have relevance in a limited degree with respect to other testimony, but just so you understand at this point you are not to be—you will not be awarding any damages based upon any of the individual homeowner's internal fears or concerns."

{¶ 58} At the end of the trial, the court instructed the jury that if would address three categories of damages: "loss of use of property, annoyance and discomfort, and evacuation expenses." The court instructed the jury:

{¶ 59} "When considering annoyance and discomfort damages, no precise rule for ascertaining damage can be given, as, in the very nature of things, the degree of personal annoyance and discomfort is not susceptible to exact measurement. However, a plaintiff may not recover for trifling annoyance and unsubstantiated or unrealized fears. There must be an appreciable, substantial, tangible harm

resulting in actual, material, physical discomfort. However, the plaintiffs need not establish bodily injury to establish physical discomfort. Furthermore, evidence of pecuniary loss is not required to establish damages for discomfort and annoyance."

{¶ 60} Again, we review the instructions and admonitions for abuse of discretion and prejudice. As a preliminary point, we note that "[t]he measure of damages for tort harm to land is the same whether the theory of recovery is trespass, nuisance, negligence, or strict liability." *Francis Corp. v. Sun Co., Inc.* (Dec. 23, 1999), 8th Dist. No. 74966, 1999 WL 1249534, *1. Accord *Weber v. Obuch*, Medina App. No. 05CA0048–M, 2005-Ohio-6993, 2005 WL 3556693, at ¶ 12. Thus, parties who sustain injury to real property may recover "(1) reasonable restoration costs * * *; (2) compensation for the loss of the use of the property between the time of the injury and the restoration * * *; and (3) damages for personal annoyance and discomfort if the plaintiff is an occupant of the property." *Horrisberger v. Mohlmaster* (1995), 102 Ohio App.3d 494, 499–500, 657 N.E.2d 534.

{¶ 61} Aldrich Chemical does not dispute that Ferguson may recover damages for annoyance and discomfort. However, Aldrich Chemical argues that under *Antonik v. Chamberlain* (1947), 81 Ohio App. 465, 37 O.O. 305, 78 N.E.2d 752, Ohio law has always required "an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort" before a party can recover damages for annoyance and discomfort in nuisance cases. In opposition, Ferguson contends that *Antonik* and other cases simply include a physical component to define the existence of an actionable nuisance, not to restrict the damages that may be recovered for annoyance and discomfort.

{¶ 62} In *Antonik*, the Ninth District Court of Appeals considered whether to dismiss a petition for an injunction against a company that wanted to build an airport. The petition had been brought by neighboring landowners, who objected to the potential noise, dust, trespassing crowds, annoyance, fright and fear of physical harm, and depreciation of property values that could occur if the airport were built. In deciding whether the plaintiffs had shown sufficient evidence to warrant an order for an injunction, the Ninth District observed that "nuisance in law, for the most part consists in so using one's property as to injure the land or some incorporeal right of one's neighbor." 81 Ohio App.3d at 475, 611 N.E.2d 407. The Ninth District further noted:

{¶ 63} "The necessities of a social state, especially in a great industrial community, compel the rule that no one has absolute freedom in the use of his property, because he must be restrained in his use by the existence of equal rights in his neighbor to the use of his property. This rule has sometimes been erroneously interpreted as a prohibition of all use of one's property which annoys

or disturbs his neighbor in the enjoyment of his property. The question for decision is not simply whether the neighbor is annoyed or disturbed, but is whether there is an injury to a legal right of the neighbor. The law of private nuisance is a law of degree; it generally turns on the factual question whether the use to which the property is put is a reasonable use under the circumstances, and whether there is 'an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort, and not merely a tendency to injure. It must be real and not fanciful or imaginary, or such as results merely in a trifling annoyance, inconvenience, or discomfort.'" Id. at 476–477, 611 N.E.2d 407, quoting 39 American Jurisprudence (1942), Nuisances, Section 30.

{¶ 64} Because *Antonik* involved the issue of injunctive relief, not damages, the court used the above standard only in discussing whether a nuisance had occurred. The court concluded in *Antonik* that the maze of conflicting evidence prevented it from stating the plaintiffs' legal injury with any accuracy. Id. at 478, 37 O.O. 305, 78 N.E.2d 752. As a result, the court held that the plaintiffs had failed to establish the irreparable injury needed for an injunction, and dismissed the case. Id.

{¶ 65} As noted, *Antonik* does not contain any discussion of the potential elements of damages in nuisance cases. Despite this fact, the above language in *Antonik* has been used in a damages context. In *Bullock v. Oles* (Sept. 24, 2001), Mahoning App. No. 99 CA 223, 2001 WL 1199858, *2, the trial court awarded $10,000 in damages to the plaintiffs, after finding that the defendant's defective septic tank was a nuisance. Id. at *1. On appeal, the defendants contended that the judgment was against the weight of the evidence. Before discussing the evidence, the Ninth District noted:

{¶ 66} "An award of damages does not inevitably follow the finding of a nuisance. * * * However, in assessing the damages for the maintenance of a nuisance, the trier-of-fact may look 'to injury as occurs to the use of the property as a residence, taking into consideration the discomfort and annoyance which the owner has suffered from the nuisance.' *Frey v. Queen City Paper Co.* (1946), 79 Ohio App. 64, 70[, 34 O.O. 454, 66 N.E.2d 252]. The amount of annoyance or inconvenience that will constitute a legal injury, resulting in actual damage, cannot be precisely defined and must be left to the discretion of the trier-of-fact. * * *

{¶ 67} "Damages may be awarded simply for discomfort or annoyance in the use of the property; the discomfort does not need to be constant, the value of the property depreciated, the health of the occupants compromised, or the rental value of the property impaired. * * * The factual question is whether there is an 'appreciable, substantial, tangible injury resulting in actual, material, and physical discomfort' during the reasonable use of the property. *Rautsaw v.*

*Clark* (1985), 22 Ohio App.3d 20, 21[, 22 OBR 54, 488 N.E.2d 243]. Evidence of pecuniary loss is not required to recover damages for discomfort and annoyance caused by a nuisance. * * * The assessment of those damages is within the province of the trier-of-fact and the reviewing court should not substitute its judgment unless the judgment appears to be the result of passion or prejudice and manifestly excessive." *Bullock* at *2.

{¶ 68} In applying the above standards, the Ninth District commented on the following evidence during a two-year period when effluent continued to drain into the plaintiffs' yard:

{¶ 69} "The Bullocks lost the use of their backyard and the pool located there for family and neighborhood get-togethers due to the standing effluent on the surface of their yard. Mrs. Bullock could not let her grandchildren play in the backyard because she was afraid they may get diseases from the waste. Cutting the lawn in the affected area also caused problems. Mr. Bullock had to wear a mask, take frequent breaks, and suffered from nausea, headaches and unusual fatigue after the chore. The effluent saturation on the Bullocks' yard altered the grading of the ground, requiring fill dirt to repair the damage. Further, due to the altered grading, the damage to the pool area necessitated pool repairs. Finally, doors and windows to the house had to remain closed because the noxious odor produced by the effluent made the Bullock's yard smell 'like an outhouse.' " *Bullock* at *3.

{¶ 70} Ferguson and Aldrich both rely on *Bullock* as support for their respective positions. Ferguson contends that physical discomfort is not required because the damages in *Bullock* included worry about grandchildren playing on the property. Aldrich cites *Bullock,* among other cases, for the severity of the annoyance or intrusion on which damages are based, such as foul odors, stench from dead fish, excessive fly ash, and nearly continuous and overwhelming noise.

{¶ 71} In the case before us, the trial court focused on the fact that physical discomfort is part of the definition of a nuisance and reasoned that damages for nuisance could not, therefore, include nonphysical discomfort. The problem with this reasoning, however, is that courts have used various standards that do not necessarily include a physical-discomfort component. Instead, the pertinent focus is on whether the annoyance or discomfort is material and substantial, as opposed to trifling. Furthermore, even if a physical component is present, as in *Bullock,* the appropriate focus is on the impact "during" the reasonable use of the property. In the present case, the explosion had a substantial physical impact, and the explosion is the event from which the claims for damages flow. Furthermore, as plaintiffs contend, this issue is really more pertinent to the question of whether a nuisance exists.

{¶ 72} In *Columbus Gaslight & Coke Co. v. Freeland* (1861), 12 Ohio St. 392, the Ohio Supreme Court focused on whether the plaintiff had suffered a "legal injury"—which was described as "a real, material and substantial injury." Id. at 400. Subsequently, in *Eller v. Koehler* (1903), 68 Ohio St. 51, 67 N.E. 89, the plaintiff claimed a nuisance due to the vibration and noise of the defendant's machinery. The Ohio Supreme Court stated:

{¶ 73} "[I]t has always been the law that, in order to subject one to an action for nuisance, the injury must be material and substantial. It must not be a figment of the imagination. It must be tangible. In *Columbus Gas, etc., Co. v. Freeland*, 12 Ohio St. 392, this court settled this question for this state in the following definite resolution: 'What amount of annoyance or inconvenience will constitute a nuisance, being a question of degree, dependent on varying circumstances, cannot be precisely defined.'" *Eller*, 68 Ohio St. at 55, 67 N.E. 89.

{¶ 74} In a subsequent situation involving a city's discharge of sewage into natural water, a circuit court concluded:

{¶ 75} "In a case for injury to the comfortable enjoyment of property, by the owner and occupant thereof, no precise rule for ascertaining the damage can be given, as in the very nature of things, the subject matter affected is not susceptible of exact measurement, therefore the jury must be left to say what in their judgment the plaintiff ought to have in money, and what the defendant ought to pay, in view of the discomfort or annoyance to which the plaintiff and his family have been subjected by the nuisance, together with such additional sum as will compensate plaintiff for loss of time and expenses caused by sickness of himself and family due to the nuisance. The recovery is only limited to the actual damage sustained." *Mansfield v. Hunt* (1900), 19 Ohio C.C. 488, 10 Ohio C.D. 567, 1900 WL 1068, *6.

{¶ 76} Other cases have held that the plaintiff is entitled to recover damages for "personal discomfort and annoyance" without including a physical component. *Graham & Wagner v. Ridge* (1931), 41 Ohio App. 288, 293, 179 N.E. 693. Accord *Frey v. Queen City Paper Co.* (1946), 79 Ohio App. 64, 71–72, 34 O.O. 454, 66 N.E.2d 252 (using personal-discomfort-and-annoyance standard in case involving fly ash that settled on plaintiff's property. There, the court stated that " '[t]he authorities strongly preponderate in support of the doctrine that an occupant of real estate (whether owner or not) may recover damages for personal discomfort, annoyance, etc., resulting to him from a nuisance, in addition to, or separate from, damages suffered in respect of the market value of the premises, or injuries to or destruction of building, crops, etc., thereon' ").

{¶ 77} Other cases using a similar approach include *Lasko v. Akron* (1958), 109 Ohio App. 409, 412–413, 11 O.O.2d 337, 166 N.E.2d 771 (no specific claims of physical discomfort in case; "measure of damage for nuisance is * * * the

discomfort, annoyance and inconvenience in the use of the plaintiff's property"); *Gertz v. N. Ohio Rifle Club, Inc.* (April 18, 1977), Geauga App. No. 676, 1977 WL 199383, *1 (no indication of physical discomfort where a rifle club obtained a permit to engage in trapshooting on property near plaintiff's home; the appellate court affirmed a $1,000 damages award against the club for "personal discomfort and annoyance"); *Reeser v. Weaver Bros., Inc.* (1992), 78 Ohio App.3d 681, 694, 605 N.E.2d 1271 (the discussion by the Second District Court of Appeals does not indicate that the damages involve physical discomfort; the Second District held that an occupier of land where a "fish-kill" in a lake occurred due to pollution could recover the damages, if any, that resulted from "discomfort and annoyance"); *Wray v. Deters* (1996), 111 Ohio App.3d 107, 113, 675 N.E.2d 881 (a trench dug in the plaintiff's backyard involved noise, danger, annoyance, dirt, and disruption of life, but there was no indication of physical discomfort. The court held that temporary nuisance elements of inconvenience and annoyance may be considered in determining the fair market value of a temporary easement).

{¶ 78} We have found the existence of a nuisance in situations where only personal annoyance, rather than physical discomfort, has been involved. In *Harford v. Dagenhart* (1936), 21 Ohio Law Abs. 308, 1936 WL 2027, the plaintiff sought to enjoin the defendant from operating an embalming or undertaking establishment or funeral home in the defendant's house, which was located in a residential area. 1936 WL 2027 at *1. There was no indication in *Harford* that the use would expose the plaintiff to noxious smells or chemicals, or to the risk of disease. Id. at *1–2. Instead, the contention was that operation of the funeral parlor would:

{¶ 79} "[B]e distressing to the plaintiff and others who live in the immediate vicinity, interfere with the comfortable use of their homes, cause them mental distress resulting in lessened resistance to disease, that the value of property in the vicinity will be materially decreased." Id. at *2.

{¶ 80} In considering whether an injunction against the operation should be granted, we discussed the trend toward finding that the operation of a funeral parlor in a residential area is a nuisance. We noted authority rejecting the conclusion that nuisances could not exist in the absence of "questions of communicating disease or fouling the air." *Harford* at *5. In this regard, we quoted from a decision of the Missouri Supreme Court:

{¶ 81} " 'In other words, * * * for such an establishment to constitute a nuisance, its character must be such as to directly affect the health or grossly offend the physical senses. This position is without support in the decided cases. * * * A careful reading of the cases will disclose that what has been stressed, and * * * made the basis of injunctive relief, is this: Constant reminders of death, such as an undertaking establishment and the activities connected with it,

give rise to, impair in a substantial way the comfort, repose, and enjoyment of the homes which are subject to them.' " Id., quoting from *Street v. Marshall* (1927), 316 Mo. 698, 706, 291 S.W. 494.

{¶ 82} In *Harford,* we went on to note that:

{¶ 83} "In an early leading case, *Saier et v. Joy et,* 198 Mich. 295, 164 N.W. 507 it is said:

{¶ 84} " 'It requires no deep research in psychology to reach the conclusion that a constant reminder of death has a depressing effect upon the normal person.'

{¶ 85} " 'A mere trifling annoyance, inconvenience or discomfort to one with too fastidious or refined tastes will not constitute a nuisance, yet a nuisance exists where noxious odors or other conditions are a substantial annoyance or a physical discomfort to an ordinary person, or an injury to his health or property.' Joyce on Nuisances, Par. 157 & 162; Wood on Nuisances, Par. 600, 20 R.C.L. 382–3.

{¶ 86} " 'Disturbance of the enjoyment of the comfort of one's home has been classified as within the sphere of the physical.' *Bragg v. Ives* (1927) (Va.) [149 Va. 482], 140 S.E. 656." 1936 WL 2027 at *5–6.

{¶ 87} Accordingly, we concluded in *Harford* that the injunction against operation of the funeral home should be granted. Id. at *11. Notably, we used the disjunctive standard of "substantial annoyance or physical discomfort." Id. at *5.

{¶ 88} Likewise, in *Angerman v. Burick,* Wayne App. No. 02CA0028, 2003-Ohio-1469, 2003 WL 1524505, the Ninth District Court of Appeals affirmed a permanent injunction against operation of a motocross track, where the "noise generated by the track was piercing and annoying and interfered with the peace and quiet * * * enjoyed in the area before the track was opened." Id. at ¶ 20.

{¶ 89} The Ninth District Court of Appeals did conclude in *Angerman* that the trial court had properly refused to award damages for annoyance. However, this decision was not based on the plaintiff's failure to prove physical discomfort. Instead, the Ninth District noted that a few items of testimony about annoyance and inconvenience from dust and noise "fell short" of proving that the trial court had lost its way in refusing to award damages. Id. at ¶ 35. In addition, the Ninth District Court of Appeals noted that the plaintiffs had requested economic damages for diminution in value but did not also seek compensatory damages for annoyance and discomfort. Id. at ¶ 36.

{¶ 90} Similarly, in *Stoll v. Parrott & Strawser Properties, Inc.,* Warren App. Nos. CA2002–12–133 and CA2002–12–137, 2003-Ohio-5717, 2003 WL 22427815, a jury awarded the plaintiffs $175,000 in damages for discomfort and annoyance,

when the evidence showed 16 occasions on which water from an adjacent development had overflowed onto their property. Id. at ¶ 25. On appeal, the Twelfth District Court of Appeals affirmed, finding that the verdict was not against the manifest weight of the evidence. Id. at ¶ 26. The evidence recounted by the Twelfth District Court of Appeals reveals inconvenience and annoyance, but not necessarily "physical discomfort." Specifically, the family in *Stoll* was unable at times to leave the property and get to work and had to clean up debris after flooding. Id. at ¶ 25. These matters were unquestionably annoying, but there is no indication that actual, material, physical discomfort was involved.

{¶ 91} In *Polster v. Webb* (June 21, 2001), Cuyahoga App. No. 77523, 2001 WL 703875, the trial court concluded after a bench trial that the plaintiffs had failed to sustain their burden on damages. Id. at *1. The Eighth District Court of Appeals reversed, finding that the plaintiffs' testimony that they were "annoyed by the condition of the * * * [defendants'] property constitutes sufficient evidence to prove their entitlement to damages." Id. at *4. The alleged nuisance was the defendants' operation of a commercial landscaping/snow blowing business on residential property. Id. at *1. The Eighth District Court of Appeals noted:

{¶ 92} "Pursuant to Section 929(1)(c) of the Restatement of Law 2d, Torts, appellants, as occupants, are entitled to damages for the annoyance and discomfort caused by the nuisance on the Webbs' property. At trial, Mrs. Polster testified that for three years, her family was unable to open the windows on the side of her house due to the dust, dirt, noise, and smell from the Webbs' property. She also testified that the situation lessened her enjoyment of her property. Mr. Polster testified that the Webbs' trash would blow onto their yard and that debris including old tires located behind a shed on the Webbs' property was an eyesore. He also testified that John Webb dug up his drain tile, causing a swamp-like condition on their property and that the condition lessened their enjoyment of the property." Id. at *4, citing Restatement of the Law 2d, Torts (1965), Section 929(1).

{¶ 93} Notably, Section 929(1) of the Restatement says nothing about a requirement of physical discomfort—it merely states that one element of damages is "discomfort and annoyance" to occupants. Comment e to Subsection (1), clause (c) also states as follows:

{¶ 94} "Discomfort and other bodily and mental harms. Discomfort and annoyance to an occupant of the land and to the members of the household are distinct grounds of compensation for which in ordinary cases the person in possession is allowed to recover in addition to the harm to his proprietary interests." We note that if recovery were limited to physical discomfort only, the Restatement would not refer to "other bodily and mental harms."

{¶ 95} On remand, the trial court in *Polster* awarded $10,000 in damages to the plaintiffs. See *Polster v. Webb*, 160 Ohio App.3d 511, 514, 2005-Ohio-1857, 827 N.E.2d 864, at ¶ 9.

{¶ 96} In view of the above discussion, we conclude that the trial court erred in instructing the jury that plaintiffs had to establish "an appreciable, substantial, tangible harm resulting in actual, material physical discomfort." This error was further compounded by two matters that would likely have confused the jury even if the instruction were legally correct.

{¶ 97} The first problem is that the court substituted the word "harm" for the word "injury" in the standard taken from *Antonik*. See *Antonik*, 81 Ohio App. 465, 476, 37 O.O. 305, 78 N.E.2d 752 (noting that a "nuisance" requires "an appreciable, substantial, tangible injury resulting in actual, material, physical discomfort"). The court then told the jury that bodily injury was not required.

{¶ 98} This may have been the trial court's attempt to distinguish between "harm" and "injury" and add clarity, but it would likely have had the reverse effect of confusing the jury. A layperson would typically equate the word "harm" with the word "injury." A layperson would also likely see little difference between "bodily injury" and an "appreciable, substantial harm" causing "actual, material, physical discomfort." Nonetheless, the jury was told that these two items are different, when they appear to be similar.

{¶ 99} The second area of likely confusion involves the trial court's division of annoyance and discomfort into separate phases (preevacuation, evacuation, and postevacuation). These distinctions are artificial and confusing. As only one example, this led to the court's willingness to let the jury consider the preevacuation annoyance and discomfort of an individual who testified that she heard a "terrible boom" and "felt" it in her stomach. By the same token, the jury was not allowed to consider the same individual's annoyance and discomfort during the 24–hour period after the evacuation, because she did not testify about having "substantial physical" discomfort during that time frame.[2] Again, these distinctions are artificial and narrow, as a result of which they were likely to have been confusing to the jury.

{¶ 100} "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165. In the

---

**2.** The party in question did testify that she was uncomfortable where she ended up staying during the evacuation and that the experience was a big inconvenience.

case before us, the jury charge was incorrect and would likely have misled the jury even if it had been a correct statement of the law.

{¶ 101} In case before us, the explosion was the nuisance or precipitating event that necessitated the need for an evacuation of residents within about a one-mile radius. The explosion created a substantial physical impact. Nonetheless, this type of situation differs from *Bullock* and many other nuisance cases, where the nuisance, although temporary, occurs over a period of time during which the plaintiffs continue to use their property.[3]

{¶ 102} In *Bullock,* the nuisance arose from a defective septic tank located on the defendants' property, which had been declared a nuisance by the Board of Health. The nuisance continued for two years, and was still in existence at the time of trial, but was considered "temporary" because it was capable of being abated. *Bullock,* Mahoning App. No. 99 CA 223, 2001 WL 1199858, at *1. The annoyance and discomfort arose from the plaintiffs' exposure to foul odors in their backyard, the loss of the use of their yard, and the husband's nausea while cutting his grass during the two-year period. Id. In discussing the issue of damages for annoyance and discomfort, the court observed that:

{¶ 103} "It is not necessary that the property owners be driven from their dwelling before an award of damages for nuisance is justified. * * * Damages may be awarded simply for discomfort or annoyance in the use of the property; the discomfort does not need to be constant, the value of the property depreciated, the health of the occupants compromised, or the rental value of the property impaired. * * * The factual question is whether there is an 'appreciable, substantial, tangible injury resulting in actual, material, and physical discomfort' *during* the reasonable use of the property." (Emphasis added.) Id. at *2.

{¶ 104} In contrast, the plaintiffs in the present case were driven from their property by the nuisance and did not continue to use the property. Furthermore, the court in *Bullock* did distinguish between "physical discomfort" and annoyance or inconvenience, by stating that "[t]he testimony, if believed, establishes injuries in the form of inconvenience, annoyance and physical discomfort supporting an award of damages." Id. at *3. Had the court felt that there must be a physical component to annoyance and inconvenience, the court would not have made such a distinction. Accordingly, we see no conflict or significant difference between *Bullock* and the present case.

{¶ 105} We review the trial court's instructions for abuse of discretion, which " 'connotes more than an error of law or judgment; it implies that the

---

**3.** The plaintiffs did contend at trial that the nitrous-oxide distillation was a continuing nuisance until December 2003, when the process was finally abated. We will discuss this matter later in our opinion.

court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. However, "an abuse of discretion most commonly arises from a decision that was unreasonable." *Wilson v. Lee,* 172 Ohio App.3d 791, 2007-Ohio-4542, 876 N.E.2d 1312, ¶ 11. "Decisions are unreasonable if they are not supported by a sound reasoning process." *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 300, 741 N.E.2d 155, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597. Because the trial court incorrectly stated the law as to the plaintiffs, the trial court abused its discretion. Furthermore, the instructions were prejudicial, since they inserted an element that restricted plaintiffs to damages based on actual, material, physical discomfort, and were confusing in any event. Accordingly, this part of the first assignment of error has merit and is sustained.

## C. Recovery for Fear and Concern

{¶ 106} The final issue in the first assignment of error concerns the trial court's rejection of fear or concern as a compensable item of damages. Ferguson contends that other Ohio cases, including *Reeser, Bullock, Polster,* and *Stoll,* have included mental upset and inconvenience, fears, and worries within the damages for nuisance. In contrast, Aldrich Chemical contends that nuisance awards are based on physical discomfort, not subjective concerns. Aldrich Chemical also points out that Ferguson has not alleged, and cannot satisfy, the standards for emotional distress.

{¶ 107} We have already concluded that personal annoyance and inconvenience differ from "physical discomfort." Consequently, evidence illustrating personal annoyance and inconvenience was both admissible and relevant. Legitimate fear and safety concerns caused by an upsetting event are relevant to the issue of whether the claimants had suffered substantial personal annoyance. The trial court, in fact, did let the claimants testify about their reactions to the explosion and evacuation, even though the court had previously said it would not permit testimony on these matters. But the court instructed the jury that it would not be awarding damages for the plaintiffs' internal fear and concerns.

{¶ 108} We have concluded that the trial court erred when it imposed a "physical discomfort" requirement. We also conclude that internal fears and concerns should neither be excluded as potential elements of the annoyance damages nor segregated as discrete components of annoyance damages.

{¶ 109} Since 1983, Ohio has permitted a cause of action for the negligent infliction of serious emotional distress without a contemporaneous physical injury. *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, syllabus. "Serious emotional distress describes emotional

injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraph three (a) of the syllabus.

{¶ 110} Ferguson and other claimants presented testimony about fear, anxiety, or other emotional reactions to the explosion and evacuation, but they did not assert claims at trial for serious emotional distress. This was presumably because the trial court had granted summary judgment to Aldrich Chemical in January 2006 on the plaintiffs' claims for negligent infliction of emotional distress. Since plaintiffs did not present this claim at trial, they should not be able to indirectly insert a serious-mental-distress claim into the annoyance equation.

{¶ 111} Our review of Ohio case law indicates that courts allow evidence of worry and fear but do not separately itemize recovery for these items. For example, in *Weaver v. Yoder* (1961), 89 Ohio Law Abs. 402, 21 O.O.2d 95, 184 N.E.2d 622, the plaintiff asked for an injunction and $10,000 in damages to his home, based on the defendants' creation of a nuisance by setting off explosives. The plaintiff alleged that his house was being damaged and that "the defendants by their continuing operations, are causing great inconvenience, annoyance, discomfort, fear, injury and damage to the plaintiff in the enjoyment of his property." After a bench trial, the court concluded that the evidence showed some cracks in plaster and minor damage to the plaintiff's house and that "the detonation of black powder to blast as high as 100 tons or more of sand stone from its base at one time, within 400 feet of the plaintiff's residence, causes the plaintiff and his family to live in constant fear, causes his residence to vibrate, resulting in damage thereto, and that the smoke, noise and dust resulting from the explosions constitutes a great discomfort to the plaintiff and his family." 89 Ohio Law Abs. at 405, 21 O.O.2d 95, 184 N.E.2d 622.

{¶ 112} The fact that a family is living in constant fear due to a nuisance is evidence of personal annoyance. In *Weaver*, the trial court issued a permanent injunction limiting the blasting and awarded $1,000 for damages to the residence. However, the court did not comment on the breakdown of the damages.

{¶ 113} Other courts have subsequently allowed evidence of fear or worry associated with an alleged nuisance but have not directly stated whether these items are specific elements of damage. See, e.g., *Stoll*, 2003-Ohio-5717, 2003 WL 22427815, at ¶ 26 (noting evidence in nuisance action indicating that the affected family "now worries each time it rains, wondering whether they will be able to get out the driveway and hoping that there are no emergencies requiring them to leave").

{¶ 114} 3 Ohio Jury Instructions (2006), Section 345.13(4), adequately discusses the applicable damages standard by allowing recovery for personal annoyance and discomfort. The evidence presented at trial aided the jury's understanding of these potential damages by explaining the discomforting and annoying effect of the explosion and evacuation. Therefore, we agree with Ferguson that worry and fear are relevant and may be included within potential damages. However, we also conclude that the jury should not be instructed separately that recovery can be had for fear and concern, because these items are already encompassed within the claim for personal annoyance, and should not be an indirect substitute for claims of serious emotional distress.

{¶ 115} We should stress that while fear has a subjective element, it cannot be irrational. *Eichenberger v. Eichenberger* (1992), 82 Ohio App.3d 809, 815, 613 N.E.2d 678. The plaintiffs' fears and concerns, therefore, must be sufficient to affect a person of ordinary sensibilities. *Iams v. DaimlerChrysler Corp.* (2007), 174 Ohio App.3d 537, 551, 2007-Ohio-6709, 883 N.E.2d 466, at ¶ 44 (noting that under the Ohio Lemon Law, the question of whether a vehicle is nonconforming is "whether a reasonable person would conclude that the alleged defect or condition substantially impairs the vehicle's use, value, or safety").

{¶ 116} Ferguson's first assignment of error is sustained in part and overruled in part.

### III

{¶ 117} Ferguson's second assignment of error is as follows:

{¶ 118} "The trial court erred in excluding evidence of the fear and upset suffered by the plaintiffs."

{¶ 119} Under this assignment of error, Ferguson contends that the trial court erred in excluding or strictly limiting the admission of evidence about fear or emotion during trial. We have concluded, above, that evidence of the residents' legitimate fear, anxiety, worry, and concern for safety is material to the issue of whether they sustained personal annoyance as the result of the explosion and evacuation. Contrary to Ferguson's claim, however, the trial court did admit considerable evidence on this point. Where the court erred was in instructing the jury that these items were not the subject of the damages calculation and were of limited relevance. Accordingly, on remand, the court should allow the evidence without the limiting instruction.

{¶ 120} Ferguson's second assignment of error is overruled.

IV

{¶ 121} Ferguson's third assignment of error is as follows:

{¶ 122} "The trial court committed reversible error in holding that the plaintiffs-appellants could not recover for the loss of use and enjoyment of their property for any period of time after the 24 hour evacuation period."

{¶ 123} Under this assignment of error, Ferguson argues that the trial court erred in preventing plaintiffs from recovering for the diminished use and enjoyment of their property for periods other than the 24–hour evacuation period. Ferguson contends that the trial court should have allowed evidence about the fact that the nuisance at Aldrich Chemical was not abated until the nitrous-oxide-distillation process ceased in December 2003. Allegedly, this caused plaintiffs to suffer diminished use and enjoyment of their property.

{¶ 124} Prior to trial, Aldrich Chemical moved to exclude evidence of loss of use or annoyance and discomfort that occurred after the 24–hour evacuation period, contending that plaintiffs could recover only for the time period they were away from their property. Aldrich Chemical also contended that while certain plaintiffs may have had unsupported and speculative fears about Isotec after the 24–hour period, they could not recover for these fears. In response, plaintiffs argued that the nuisance continued until Isotec abated the NO distillation process, which was an ultrahazardous activity.

{¶ 125} In ruling on the motions prior to trial, the court concluded that plaintiffs could offer evidence as to loss of use of property and annoyance and discomfort after the 24–hour evacuation period. However, the court restricted the evidence to damages that were the result of the explosion or evacuation. The court, therefore, did not reject all consideration of damages after the evacuation, nor did the court limit the jury's consideration only to the 24–hour period of the evacuation. Instead, the court limited the evidence in general, and the jury's consideration of the evidence, to damages directly resulting from the explosion or evacuation. This recovery, in turn, was further limited by the court's restriction of annoyance and discomfort damages.

{¶ 126} During trial, plaintiffs questioned Isotec's general manager, Diane Szydel, at length about nitrous oxide and its harmful, explosive, and hazardous qualities. Szydel was additionally asked about Isotec's statements during town meetings, which indicated that Isotec did not know why the NO3 column had exploded. Szydel also testified that the hazards of the plant were discussed with concerned citizens and that citizens and township trustees had questions about what had happened and what Aldrich Chemical was going to do with the remaining column (NO6), which contained nitrous oxide and was still in operation.

The court restricted further discussion of what happened at the town meetings, because it did not consider this relevant to proximate cause.

{¶ 127} Plaintiffs subsequently made a proffer as to testimony they would have elicited about town-hall meetings following the evacuation, where Isotec was unable to indicate why the explosion occurred and could not provide assurances to citizens that another explosion would not occur during Isotec's continuing distillation of nitrous oxide in the remaining active column on the property. Plaintiffs also proffered other evidence as to past detonations and explosions in 1985, 1995, and 1998, and the fact that these incidents came up at the town meetings. According to plaintiffs, many of them were present at the town meetings, and this increased their fear regarding their safety and security and impacted the peaceful enjoyment of their homes. In response, the trial court again stressed that no recovery would be permitted for subjective fears of the homeowners.

{¶ 128} "A trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291.

{¶ 129} After reviewing the record, we find that the trial court abused its discretion to the material prejudice of the plaintiffs. At one point, the trial court stated that it could accept the relevance of an ongoing nuisance. However, the court found that the issue of a continuing nuisance was not connected to the issues of annoyance and discomfort, because the court had already concluded that a physical component was required. A harm resulting in an actual, material, physical discomfort would not have been present after the plaintiffs returned to their homes and normal lives. When the plaintiffs proffered their evidence, the court commented that:

{¶ 130} "If I heard you a minute ago, you were indicating that the entire thrust of what you placed into the record would speak to evidencing subjective fears as an element of damages, subjective fears, and of course this Court has ruled—and you strongly disagree with the Court's ruling—that subjective fears are not as a matter of law compensable damages. I've told the jury that.

{¶ 131} " * * *

{¶ 132} " * * * But in any event * * * that's the Court's ruling that—that testimony is not legally admissible * * *."

{¶ 133} As was noted above, we agree that plaintiffs may not attempt to indirectly assert claims for negligent infliction of serious emotional distress. We also agree that the damages must be related to the explosion and evacuation. However, to the extent that testimony of a continuing nuisance was offered

below, it may impact the issue of damages for loss of use of property and annoyance and discomfort following the explosion and evacuation.

{¶ 134} "A continuing trespass or nuisance occurs when the defendant's tortious activity is ongoing, perpetually creating fresh violations of the plaintiff's property rights. The damage caused by each fresh violation is an additional cause of action." *Weir v. E. Ohio Gas Co.*, Mahoning App. No. 01 CA 207, 2003-Ohio-1229, 2003 WL 1194080, ¶ 18.

{¶ 135} Accordingly, plaintiffs may attempt to recover for the existence of a continuing nuisance, and may present evidence related to the continuing nuisance and their alleged loss of use, and personal annoyance and discomfort, during the three-month period between the explosion and the time that the nitrous-oxide-distillation process was abated in December 2003. Again, we stress that internal fears and concerns should not be listed as separate elements of the personal annoyance and discomfort damages.

{¶ 136} Ferguson's third assignment of error is sustained.

V

{¶ 137} Ferguson's fourth assignment of error is as follows:

{¶ 138} "The lower court erred when it excluded evidence of prior explosions, detonations, leaks and similar calamities at the Isotec factory as well as evidence concerning Isotec's activities before it abated the nuisance."

{¶ 139} Under this assignment of error, Ferguson contends that the trial court erred in excluding evidence of prior leaks and detonations and of Isotec's activities before it abated the nuisance. Ferguson contends that Isotec has been a threat to the surrounding community for 20 years and that the jury could not understand the extent of the nuisance unless it heard about prior calamities.

{¶ 140} We review decisions on exclusion of evidence for abuse of discretion. *Krischbaum*, 58 Ohio St.3d at 66, 567 N.E.2d 1291. In the present case, the trial court excluded evidence about the cause of the explosion because it was a Phase I or liability issue, and the probative value would be outweighed by unfair prejudice or confusion. The court made the same ruling as to prior incidents at the plant.

{¶ 141} " 'Prior occurrences are sometimes relevant "to show that a party knew or had notice of a dangerous condition." ' " *Lykins v. Miami Valley Hosp.*, 157 Ohio App.3d 291, 311, 2004-Ohio-2732, 811 N.E.2d 124, at ¶ 67, quoting *Lumpkin v. Wayne Hosp.*, Darke App. No. 1615, 2004-Ohio-264, 2004 WL 102860, ¶ 13. However, Aldrich Chemical's notice of knowledge of a dangerous condition was not at issue, since Aldrich Chemical admitted liability for the explosion.

{¶ 142} The prior acts in question occurred long before the 2001 explosion. In fact, the most recent event was at least three years earlier, and the statute of limitations for that event had long since expired by the time of trial. See R.C. 2305.09(D) and *Davis v. Allen* (Jan. 18, 2002), Hamilton App. Nos. C–010165, C–010202, and C–010260, 2002 WL 63560 (four-year statute of limitations applies to nuisance actions).

{¶ 143} Nonetheless, the evidence might have been of some relevance in explaining the issue of the alleged damages for the continuing nuisance. In this regard, we note the proffer of evidence that some plaintiffs learned of the prior explosions during town meetings that occurred before the nitrous-oxide-distillation process was stopped in December 2003. The issue, therefore, is whether evidence of prior detonations and problems at the facility would have been unduly prejudicial. Even if evidence is relevant, Evid. R. 403(A) provides for exclusion of such evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 144} Since Aldrich Chemical has already admitted liability for the wrongful acts or creating a hazardous condition, it would not likely be prejudiced by limited admission of evidence about the prior explosions. This evidence should be restricted to what plaintiffs learned after the September 2003 explosion and should be admitted for the limited purpose of proving their claim of diminished loss of use and annoyance and discomfort for the continuing nuisance.

{¶ 145} As to events after the explosion, we noted in discussing the third assignment of error that plaintiffs were able to present some evidence from Isotec's general manager about the cause of the explosion and about the town hall meetings. Plaintiffs also presented testimony from a registered professional geologist, James Ludwiczak, on the explosive characteristics of nitrous oxide and the severity of the blast. Ludwiczak additionally testified about preblast programs that should be done by companies handling explosive materials, and the fact that Isotec did not conduct these activities.

{¶ 146} As a further matter, various claimants testified about being uncomfortable or fearful in their homes after the explosion, with some even indicating that they still were uneasy or did not feel safe in their homes at the time of the trial. The trial court indicated during trial that it was not issuing a blanket rule prohibiting any witness from testifying about town hall meetings. The court stressed, however, that this evidence had to be relevant to proximate cause and damages.

{¶ 147} Thus, the trial court did allow some evidence of annoyance and discomfort after the explosion, including postexplosion events. However, where the court erred was in restricting the evidence to, and in limiting plaintiffs to recovery only for actual, material, physical discomfort.

{¶ 148} Accordingly, the fourth assignment of error is sustained in part and is overruled in part.

## VI

{¶ 149} Ferguson's fifth assignment of error is as follows:

{¶ 150} "The jury's verdict of zero damages for Taylor Ferguson's loss of use and enjoyment of her home and for her annoyance and discomfort was against the manifest weight of the evidence presented at trial."

{¶ 151} Under this assignment of error, Ferguson contends that the verdict awarding zero damages for loss of use and enjoyment of her home and for annoyance and discomfort was against the manifest weight of the evidence.

{¶ 152} At the time of the explosion, Taylor Ferguson was a ten-year-old girl who experienced the explosion and was evacuated, along with her parents. The trial court decided at the end of the case what damages would be included on the interrogatory of each particular claimant. The court concluded that Ferguson's interrogatory would include potential recovery for annoyance and discomfort before and during the evacuation, and for loss of use of her home during the 24–hour evacuation period. The jury returned a verdict of $100 for annoyance and discomfort before the evacuation, zero dollars for loss of use of property during the evacuation period, and zero dollars for annoyance and discomfort during the evacuation period. Ferguson's potential claims for loss of use before the evacuation period, annoyance and discomfort after the evacuation period, and evacuation expenses were not submitted to the jury.[4]

{¶ 153} We conclude that this assignment of error is moot, given the resolution of the other assignments of error. Ferguson's fifth assignment of error, therefore, is overruled as moot.

## VII

{¶ 154} The first and fourth assignments of error are overruled in part and are sustained in part, the second assignment of error is overruled, the third assignment of error is sustained, and the fifth assignment of error is overruled as moot. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WOLFF, P.J., and WALTERS, J., concur.

---

4. The evidence does not indicate that Ferguson had any evacuation expenses.

SUMNER E. WALTERS, J., retired, of the Third District Court of Appeals, sitting by assignment.